**Richard W. LUCAS, Plaintiff–Appellant,**

**v.**

**MOUNTAIN STATES TELEPHONE & TELEGRAPH; Communications Workers of America, District 7, Defendants–Appellees.**

No. 89–1157.

United States Court of Appeals, Tenth Circuit.

July 30, 1990.

William E. Benjamin, Boulder, Colo., for plaintiff-appellant.

Coleman M. Connolly, Denver, Colo., for defendant-appellee Mountain States Tel. and Tel. Co.

Gerard C. Boyle, Susan J. Tyburski of Boyle and Tyburski, Denver, Colo., for defendant-appellee Communications Workers of America, District 7.

Before LOGAN, JONES,[*] and SEYMOUR, Circuit Judges.

PER CURIAM.

Richard W. Lucas, a former employee of Mountain States Telephone & Telegraph Company (Mountain States), brought this action against Mountain States and his collective bargaining agent, the Communication Workers of America (Union). Lucas alleged that Mountain States breached the collective bargaining agreement it had with the Union by discharging him in violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), and that the Union, by inadequately representing him in the subsequent grievance proceedings, breached its duty of fair representation. The district court dismissed the action on summary judgment as barred by the applicable statute of limitations, and this appeal followed.[1] We affirm.

This court reviews a grant of summary judgment under the same standard applied by the trial court. *Osgood v. State Farm Mut. Auto Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence in the record must be viewed in the light most favorable to the party opposing the motion. *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985).

The facts pertinent to this appeal are undisputed. Lucas was terminated from his employment on February 23, 1987. The grievance he filed pursuant to the collective bargaining agreement was pursued through the three preliminary stages of the grievance mechanism. At each stage, Mountain States and the Union failed to reach an agreement satisfactory to Lucas. After the third stage, the Union elected not to seek arbitration, as permitted under the collective bargaining agreement, and mailed Lucas a Grievance Status Report dated May 8, 1987, which stated in part that "[t]he Union closed the grievance in disagreement, and no further action will be taken." Lucas read the report on May 14, 1987, and took no further action until he filed his complaint on December 7, 1987.

In *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 154–55, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983), the Supreme Court held that the six-month statute of limitations prescribed by section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to hybrid suits under section 301 which, as here, charge that an employer breached a collective bargaining agreement and that a union breached its duty of fair representation. The Court in *DelCostello* did not decide when the six-month period begins to run. In this case, the district court concluded that Lucas' cause of action accrued when he read the Grievance Status Report on May 14, 1987, and that the complaint, filed approximately seven months later, was therefore untimely. On appeal, Lucas essentially argues that the six-month limitation period began to run only after the time period within which his Union could seek arbitration had expired, which according to Lucas occurred on June 7, 1987.

This court has never directly addressed the question of what events signal the commencement of the limitation period in hybrid section 301 suits. Courts which have considered the question have generally held that the limitation period begins to run when an employee knows or in the exercise

[*] Honorable Nathaniel R. Jones, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

of reasonable diligence should have known or discovered the acts constituting the union's alleged violations. *Ghartey v. Saint John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir.1989); *Sosbe v. Delco Elecs. Div. of G.M.C.*, 830 F.2d 83, 87 (7th Cir.1987); *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir.1987); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir.1986); *Dowty v. Pioneer Rural Elec. Coop., Inc.*, 770 F.2d 52, 56–57 (6th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 557 (1985); *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 887 (11th Cir.1985); *McLinn v. Boeing Co.*, 715 F.Supp. 1024, 1029 (D.Kan.1989).

■ Application of this general rule turns on the context in which the claim arose. In the simplest case, a union rejects or abandons the claims of an aggrieved employee at some point in the grievance process. In such situations, courts have uniformly held that the six-month limitation period begins to run when the employee knows or, through the exercise of reasonable diligence, should have known of that union's decision or action. *See, e.g., Sosbe*, 830 F.2d at 87 (hybrid claim accrued when employee "informed ... that the union would not pursue her grievance"); *Demchik v. General Motors Corp.*, 821 F.2d 102, 105–06 (2d Cir.1987) (hybrid claim based on union's failure to file notice of appeal in grievance procedure did not accrue until employee "apprised" of union's failure); *McCreedy*, 809 F.2d at 1236 ("[T]he employee's hybrid cause of action may arise when the union takes an unequivocal position that it will not seek arbitration."); *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir.1986) ("The cause of action accrues [in hybrid suit] from the time ... the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance."); *King v. New York Telephone Co.*, 785 F.2d 31, 34–36 (2d Cir.1986) (hybrid claim did not accrue until employee "knew or had reason to know of" union's failure to make timely demand for arbitration); *Harper v. San Diego Transit Corp.*, 764 F.2d 663, 669 (9th Cir.1985) (hybrid

claim accrued "the day that [employee] received [union's] letter that it would not pursue arbitration of [employee's] discharge"); *Taylor v. Ford Motor Co.*, 761 F.2d 931, 934 (3rd Cir.1985) ("[H]ybrid section 301 action accrues ... when the union unequivocally refuses to assist [employee]"), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986).

■ On the other hand, when a union represents an employee throughout a grievance procedure, a claim challenging the adequacy of that union's representation normally does not accrue until the dispute resolution process has been completely exhausted. *See, e.g., Ghartey*, 869 F.2d at 163–64 (when union represented employee throughout grievance and arbitration proceedings, hybrid cause of action does not accrue until "there has been ... decision issued in the arbitration"); *Galindo*, 793 F.2d at 1509 ("[W]here a duty of fair representation suit seeks to overturn an unfavorable arbitration award on the ground that the union committed errors in the arbitration proceedings, the claim accrues when the employee learns of the arbitrator's award."); *Dowty*, 770 F.2d at 56–57 (hybrid cause of action accrued when employee "learned of arbitrator's award"); *Samples*, 755 F.2d at 887 n. 7 ("Because questions as to the union's breach of its duty of fair representation usually arise in an action to overturn an unfavorable arbitration award, knowledge of the union's breach can normally be attributed to the employee at the moment when he learns of the unfavorable award."). Exhaustion of the grievance process is appropriate in such cases because the possibility exists that an employee could be made whole by the grievance process and therefore have no claim against his union even if his union failed to exercise due care. *See Ghartey*, 869 F.2d at 163.

■ Similarly, in duty-of-fair-representation cases in which the alleged breach of duty arises outside the context of processing a grievance, courts have held that accrual of such a claim can be tolled by an employee's good faith attempt to exhaust

the grievance procedures. *Galindo,* 793 F.2d at 1509–10 ("[A] fair representation claim not based on how a grievance is presented to an arbitrator is tolled while good faith attempts are made to resolve that claim through grievance procedures."); *Adkins v. International Union of Elec., Radio & Mach. Workers,* 769 F.2d 330, 336 (6th Cir.1985) ("But where the union's alleged breach of duty is in a nongrievance context, as here, the employees' good-faith attempt to exhaust their contractual remedies will prevent the accrual of their action."); *see also Frandsen v. Brotherhood of Railway, Airline & Steamship Clerks,* 782 F.2d 674, 681 (7th Cir.1986) (hybrid claim tolled "by the pursuit of internal union remedies, even where those remedies are ultimately determined to have been futile"). To hold otherwise, according to these courts, would undermine the national policy favoring nonjudicial resolution of labor disputes by penalizing an employee who seeks to resolve his dispute through the grievance process before filing suit in federal court. *Galindo,* 793 F.2d at 1510; *Adkins,* 769 F.2d at 336.

■ In this case, we are confronted with an ordinary situation in which a union abandoned an employee during the grievance process. Thus, the decisive issue here is whether Lucas knew or should have known of the Union's decision more than six months before this action was brought. Lucas argues that the Grievance Status Report, the reading of which the district court relied on as signaling the commencement of the limitation period, did not provide sufficient notice because it did not expressly state that the Union would not pursue arbitration. This argument is obviously untenable since the Grievance Status Report was, at the very least, sufficient to cause a reasonable person to inquire further into the Union's decision. Thus, even if we were to make the dubious assumption that actual knowledge of the Union's decision could not be attributed to Lucas through the Grievance Status Report, Lucas still should have known on May 14, 1987, through the exercise of reasonable diligence that the Union had abandoned his grievance claim.

Accordingly, the judgment of the United States District Court for the District of Colorado is AFFIRMED.