PUBLISH

# UNITED STATES COURT OF APPEALS

Filed 11/15/96           TENTH CIRCUIT

---

DAVID ARNOLD,

      Plaintiff-Appellant,

v.

AIR MIDWEST, INC. and A.R.
PAQUETTE,

      Defendants,               No. 95-3185

and

AIR LINE PILOTS ASSOCIATION,
and JOHN G. SCHLEDER,

      Defendants-Appellees,

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 93-CV-2426)

---

Edward A. McConwell (Laura L. McConwell, with him on the briefs), of
McConwell Law Offices, Overland Park, Kansas, for Plaintiff-Appellant.

Marcus C. Migliore (Eugene B. Granof, with him on the brief), of Air Line Pilots
Association, Legal Department, Washington, D.C., for Air Line Pilots Association
and John G. Schleder, Defendants-Appellees.

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **LUCERO**, Circuit Judges.

**SEYMOUR**, Chief Judge.

David Arnold's employment as a pilot was terminated by Air Midwest, Inc. on November 6, 1992. Mr. Arnold brought suit against his union, the Air Line Pilots Association ("ALPA"), for breach of its federal duty of fair representation under the Railway Labor Act, and for breach of contract and of fiduciary duty arising out of alleged deficiencies in pre-termination representation. Mr. Arnold also brought claims against union attorney John G. Schleder for breach of fiduciary duty and legal malpractice, arising out of the same alleged deficiencies in representation.[1] The district court granted summary judgment in favor of defendants, holding that the six month statute of limitations had run on Mr. Arnold's duty of fair representation claim against the union, that his state law claims against the union and its attorney are preempted by federal labor law, and that Mr. Schleder is immune from suit as an agent of the union. Mr. Arnold appeals, and we affirm.

---

[1]Mr. Arnold's Complaint also asserted claims against Air Midwest and its vice-president for, inter alia, wrongful termination, defamation, and tortious interference with his livelihood. Those claims are not at issue in this appeal.

I.

This court reviews a grant of summary judgment under the same standard applied by the district court.[2] Summary judgment is appropriate if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the evidence in the record in the light most favorable to the nonmoving party. Bohn v. Park City Group, Inc., 94 F.3d 1457, 1460 (10th Cir. 1996). Viewed in this light, the facts are as follows.

In October 1992, Mr. Arnold concluded that Air Midwest was requiring operation of aircraft in a manner contrary to aircraft specifications and federal regulations. Mr. Arnold began operating his plane in what he believed was a safe manner, contrary to Air Midwest directives. On October 19, Mr. Arnold was warned that he was in trouble for failing to achieve the set flight times, and on October 21 he was suspended. Mr. Arnold requested legal representation from ALPA, and ALPA assigned Mr. Schleder to assist Mr. Arnold in discussions with

---

[2]We reject Mr. Arnold's argument that the district court acted improperly in converting defendants' motion to dismiss to a motion for summary judgment. Notice to the parties is required to prevent unfair surprise when a judge converts a 12(b)(6) motion into a Rule 56 motion. Nichols v. United States, 796 F.2d 361, 364 (10th Cir. 1986). But "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the part[y] puts [him] on notice that the judge may treat the motion as a Rule 56 motion." Wheeler v. Main Hurdman, 825 F.2d 257, 260 (10th Cir.), cert. denied, 484 U.S. 986 (1987). Because Mr. Arnold submitted material beyond the pleadings in opposition to defendants' motion, he is scarcely in a position to claim unfair surprise or inequity.

Air Midwest. Air Midwest accused Mr. Arnold of participating in a union "slow down," which Mr. Arnold denied. Mr. Arnold was advised by Mr. Schleder that, as a union representative, Mr. Schleder might have a conflict of interest if the union and Mr. Arnold made contradictory statements. Mr. Arnold expressed to union representatives his ongoing concerns about this conflict, and about his difficulty in contacting the ALPA attorneys, but he nonetheless continued to rely on Mr. Schleder.

On October 27, Mr. Arnold and Mr. Schleder met with management. After questioning by management, Mr. Arnold was informed that he would be terminated. His termination was confirmed by letter dated November 6. ALPA filed a request for reconsideration on Mr. Arnold's behalf. On November 21, Mr. Arnold informed ALPA that he had retained private counsel to represent him in the grievance proceedings. ALPA nevertheless continued to assist Mr. Arnold through the person of Mr. Schleder. When the request for reconsideration of the termination was denied January 5, 1993, ALPA filed an appeal for Mr. Arnold with the Air Midwest Systems Board, on January 28, 1993, as ALPA was required to do by the collective bargaining agreement. However, a date was never set for the Systems Board hearing. Mr. Arnold filed the instant action on October 20, 1993, asserting several claims against both ALPA and Mr. Schleder arising out of alleged deficiencies in representation from October 20 to November 6, 1992.

II.

Mr. Arnold concedes that a six month statute of limitations applies to his duty-of-fair-representation claim. See Barnett v. United Air Lines, Inc., 738 F.2d 358, 362-64 (10th Cir.), cert. denied, 469 U.S. 1087 (1984). The question here is when Mr. Arnold's cause of action accrued, and whether the running of the statute of limitations was tolled. "Where, as here, the dates on which the pertinent acts occurred are not in dispute, the date a statute of limitations accrues is . . . a question of law reviewed de novo." Edwards v. International Union, United Plant Guard Workers, 46 F.3d 1047, 1050 (10th Cir.), cert. denied, 116 S. Ct. 60 (1995). Mr. Arnold filed suit October 20, 1993. His claim is thus untimely if his cause of action accrued earlier than April 21, 1993, unless there was tolling. The district court held that Mr. Arnold's cause of action against ALPA accrued in November 1992, and that the statute of limitations was not tolled by Mr. Arnold's attempt to exhaust his remedies against Air Midwest.

The general rule is that "the limitation period begins to run when an employee knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the union's alleged violations." Lucas v. Mountain States Tel. & Tel., 909 F.2d 419, 420-21 (10th Cir. 1990) (per curiam). We agree with the district court's conclusion that Mr. Arnold's claim for breach of the duty of fair representation accrued not later than November 1992. Both the

alleged deficiency in ALPA's representation of Mr. Arnold, including possible

conflict of interest, and Mr. Arnold's termination from employment allegedly

resulting from that deficiency, were known by him no later than his receipt of Air

Midwest's letter dated November 6, 1992. Mr. Arnold specifically bases his duty-

of-fair representation claim against ALPA on pre-November 6 conduct.

Significantly, Mr. Arnold was entitled to file suit against the union for breach of

its duty to fairly represent him in the pre-grievance proceeding without first

exhausting any remedies against the company. See Czosek v. O'Mara, 397 U.S.

25, 28-29 (1970).[3]

Mr. Arnold asserts that the statute of limitations was nevertheless tolled by

ALPA's ongoing representation of him in the grievance process. We noted in

Edwards that in duty-of-fair-representation cases in which "the union's alleged

breach arises outside the context of processing a grievance, the employee's claim

---

[3] We stated in Lucas that "when a union represents an employee throughout a grievance procedure, a claim challenging the adequacy of that union's representation normally does not accrue until the dispute resolution process has been completely exhausted." 909 F.2d at 421. This is so because until there is a final adverse result in the grievance process, "the possibility exists that an employee could be made whole by the grievance process and therefore have no claim against his union even if his union failed to exercise due care." Id. That statement was made in the context of a claim that the union did not fairly represent the employee during the grievance procedure. Here, however, Mr. Arnold's claim against ALPA arose out of ALPA's proffered assistance to Mr. Arnold in his pre-termination discussions with Air Midwest, not out of conduct of ALPA during the subsequent grievance proceedings with the company. Lucas recognizes that distinction. Id. at 421-22.

-7-

may be tolled by the employee's good faith attempt to exhaust the grievance procedures." 46 F.3d at 1054; accord Lucas, 909 F.2d at 421-22.[4]  Sound labor law policy supports tolling whenever a nonjudicial remedy might solve the labor dispute.  See Adkins v. International Union of Elec., Radio & Machine Workers, 769 F.2d 330, 336 (6th Cir. 1985), cited in Lucas, 909 F.2d at 422.  Reinstatement of Mr. Arnold through the grievance process would have resolved most, if not all, of Mr. Arnold's complaint against the union.  The district court nevertheless held the doctrine of tolling inapplicable because it concluded that ALPA did not represent Mr. Arnold in the grievance proceedings once he hired his own attorney.

Mr. Arnold claims the trial court erred in concluding that ALPA did not continue to represent him.  He maintains that although he discharged *Mr. Schleder* and retained private counsel, he never discharged the *union* from representing him.  Mr. Arnold further contends the actions taken by the union on his behalf after November 6 establish that the union was engaged in his representation, notwithstanding his retention of private counsel.  Viewed most favorably to Mr. Arnold, the evidence in the record suggests that Mr. Arnold did not discharge ALPA itself, and that ALPA's provision of assistance after November 6 indicates

---

[4] Our opinion in Lucas used the imprecise formulation that "accrual of [the employee's] claim can be tolled" by an attempt to exhaust the grievance process. 909 F.2d at 421 (emphasis added).  Edwards makes it clear that the proper reading of this passage is that the claim has accrued, but the running of the statute of limitations may be tolled.

ALPA continued to represent Mr. Arnold. We note in this regard that the collective bargaining agreement requires the union to represent an employee before the Systems Board; he may not represent himself individually. Consequently, the district court erred in concluding otherwise for summary judgment purposes.

Nonetheless, we agree that Mr. Arnold's duty-of-fair-representation claim was not timely filed because Mr. Arnold does not provide evidence to support tolling the statute of limitations until April 21, 1993. After ALPA filed the appeal on Mr. Arnold's behalf with the Systems Board on January 28, no hearing was ever scheduled. The record indicates that Air Midwest, ALPA, and Mr. Arnold agreed a hearing would be scheduled for a mutually convenient time beyond the normal thirty day limit. The only other evidence in the record, introduced by Mr. Arnold himself, established that on February 25, Air Midwest's counsel wrote to Mr. Arnold's counsel advising that he was still waiting for Mr. Arnold to propose a date convenient to him for the Systems Board hearing. There is no evidence that Mr. Arnold ever proposed a hearing date. The record and Mr. Arnold are utterly silent about his continued inaction after that time. Mr. Arnold asserts only that ultimate responsibility for setting a hearing lies with the chairman of the Systems Board. Under these circumstances, we do not accept Mr. Arnold's argument that the statute of limitations ought to be tolled indefinitely.

We stated in <u>Lucas</u> that accrual of the employee's duty-of-fair-representation claim will be tolled if the employee makes a good faith attempt to exhaust grievance procedures. <u>Lucas</u>, 909 F.2d at 421-22. Mr. Arnold has not adduced evidence of such a good faith attempt subsequent to February 25, 1993.

"The application of equitable doctrines rests in the sound discretion of the district court." <u>Edwards</u>, 46 F.3d at 1055. We hold the district court did not abuse its discretion in refusing to apply the equitable tolling doctrine to Mr. Arnold's duty-of-fair-representation claim. The district court properly dismissed the claim as untimely.

III.

The district court held Mr. Arnold's state law claims against both the union and Mr. Schleder preempted by the federal duty-of-fair-representation claim, and further held that Mr. Schleder, as an agent of the union, is immune from Mr. Arnold's claims arising out of Mr. Schleder's actions taken on behalf of the union. Mr. Arnold does not appeal the district court's conclusion that his state law claims against the union are preempted by his duty-of-fair-representation claim. He contends, however, that his state law claims against Mr. Schleder are not preempted by the federal labor laws because, as an attorney, Mr. Schleder is not entitled to immunity as a union agent. In deciding the immunity issue, we

-10-

must assess the extent to which Mr. Schleder's actions were taken on behalf of the union and in fulfillment of the union's duty of fair representation to Mr. Arnold. Mr. Arnold advances two main contentions: first, general immunity for union agents should not extend to lawyers; and second, immunity does not apply here because an attorney-client relationship existed between Mr. Schleder and Mr. Arnold.[5]

Generally, a union's agents may not be held individually liable for actions taken on behalf of the union. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962). In Atkinson, the Supreme Court concluded Congress had expressed its intent in section 301 of the Labor Management Relations Act that "the union as an entity . . . should in the absence of agreement be the sole source of recovery for injury inflicted by it." Id. The Court stated that "[t]his policy cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages." Id. Accordingly, "[w]ith monotonous regularity, court after court has cited Atkinson to foreclose state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective

---

[5] At argument, Mr. Arnold's counsel suggested that recent Tenth Circuit precedent narrows the scope of preemption under the Railway Labor Act. We have examined the cases referred to by counsel, Fry v. Air Line Pilots Ass'n, 88 F.3d 831 (10th Cir. 1996); Lancaster v. Air Line Pilots Ass'n, 76 F.3d 1509 (10th Cir. 1996), and conclude they do not mandate a different result in this case.

-11-

bargaining process." <u>Montplaisir v. Leighton</u>, 875 F.2d 1, 4 (1st Cir. 1989); <u>see also</u> <u>Peterson v. Kennedy</u>, 771 F.2d 1244, 1257 (9th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1122 (1986).

Mr. Arnold urges that such immunity for union agents should not extend to attorneys. Courts have consistently rejected efforts to distinguish lawyers from other union agents for purposes of <u>Atkinson</u> immunity. In rejecting a malpractice claim against a union attorney for advice given in the grievance process, the Ninth Circuit noted that a union may use non-lawyer agents to represent its interests in the collective bargaining process. <u>Peterson</u>, 771 F.2d at 1258. "Where . . . the attorney performs a function in the collective bargaining process that would otherwise be assumed by the union's business agents or representatives, the rationale behind the <u>Atkinson</u> rule is squarely applicable." <u>Id.</u> Thus, "[a] different result is not warranted or permissible merely because a union chooses to employ an attorney rather than a business agent to perform collective bargaining functions." <u>Id.</u> at 1259. Regardless of the identity of the union agent, "when the union is providing the services, it is the union, rather than the individual business agent or attorney, that represents and is ultimately responsible to the member." <u>Id.</u> at 1258. More recently, the Ninth Circuit affirmed that immunity for attorneys who perform services for and on behalf of a union extends equally to in-house and outside union counsel. <u>See</u> <u>Breda v. Scott</u>, 1 F.3d 908, 909 (9th Cir. 1993).

-12-

The First Circuit has adopted the Peterson reasoning.  See Montplaisir, 875 F.2d at 6 (quoting Peterson extensively).

These courts have also articulated persuasive public policy considerations that favor the extension of immunity to union attorneys.  Allowing union members to proceed against the union's attorneys for malpractice would anomalously subject the union's agents to a higher standard of care than the union itself.  See Breda 1 F.3d at 909; Montplaisir, 875 F.2d at 6-7.  The standard for malpractice is negligence, but to prevail in a claim for breach of duty of fair representation, a plaintiff must prove that the union's conduct was "arbitrary, discriminatory, or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967).  Furthermore, because state statutes of limitations for legal malpractice are generally longer than the six month federal limit for hybrid actions, carving out an exception to Atkinson immunity would frustrate the strong federal policy favoring rapid resolution of labor disputes.  See DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 168 (1983).  This disparity would subject union attorneys to suit long after the limitation period had expired against both the union and employer.  Finally, it would be inequitable to impose liability on union attorneys for what are often "essentially political and strategic decisions of the union."  Breda, 1 F.3d at 909.

We find the rationale advanced in these cases to be well-grounded in the Supreme Court's precedents and well-supported by public policy.  We hold that

the immunity for union agents established by <u>Atkinson</u> extends to lawyers, and that an attorney who performs services for and on behalf of a union may not be held liable in malpractice to individual grievants where the services performed constitute a part of the collective bargaining process. That process plainly encompasses services provided by the union in its role as exclusive representative. Mr. Arnold's proper remedy would have been to timely file suit against the union on his duty of fair representation claim.

To avoid the <u>Atkinson</u> bar, Mr. Arnold contends Mr. Schleder acted as Mr. Arnold's personal representative, not the representative of the union. Mr. Arnold might be able to proceed against Mr. Schleder if Mr. Schleder had specifically agreed to provide direct representation to Mr. Arnold as an individual client. <u>See</u> <u>Peterson</u>, 771 F.2d at 1261. Mr. Arnold has not alleged any such specific agreement. "[W]here the union is providing the services, the attorney is hired and paid by the union to act for it in the collective bargaining process." <u>Id.</u> at 1258. This is so even when "the underlying grievance belongs to a particular union member who has a very real interest in the manner in which the grievance is processed." <u>Id.</u> Mr. Schleder's client was the union. Mr. Arnold's attempt to recharacterize Mr. Schleder's relationship to the union is not persuasive. Mr. Schleder was retained by the union, not by Mr. Arnold. Mr. Schleder's services were provided to Mr. Arnold as a benefit of Mr. Arnold's union membership. At

-14-

the time when representation was provided to Mr. Arnold by Mr. Schleder, Mr. Schleder also provided services on behalf of ALPA to the other ALPA pilots threatened with termination by Air Midwest. Although we must construe all evidence in the light most favorable to Mr. Arnold, there is simply no evidence in the record to suggest Mr. Schleder was retained by Mr. Arnold to provide direct representation to him as an individual client.

Mr. Arnold also suggests that Mr. Schleder's representation was not in connection with the performance of a collective bargaining function because at the time of the representation no grievance had yet been initiated. We have recognized, however, that the union's duty of fair representation may be implicated by actions taken outside the context of processing a grievance. Lucas, 909 F.2d at 421. The fact that Mr. Schleder's representation of Mr. Arnold occurred pre-termination rather than post-termination is insufficient to distinguish it from the activity by union attorneys which has consistently been found to be immune. See Montplaisir, 875 F.2d at 4-7 (applying Atkinson immunity to pre-strike counseling).[6]

---

[6] Mr. Arnold also contends the failure to subject union counsel to liability under state malpractice laws is contrary to public policy because such attorneys are effectively immunized from all liability for negligent representation. This objection does not detain us, for we do not address here the viability of a malpractice claim by the union against its attorney.

We hold that Mr. Schleder is immune from suit, and any claims against Mr. Schleder are subsumed by the union's duty of fair representation.

The judgment of the district court is **AFFIRMED.**