STATE OF VERMONT
ENVIRONMENTAL COURT

In re Hale Mountain Fish & Game Club  }
(Appeal of Beauchesne)  }

Docket Nos. 149-8-04 Vtec
& 259-12-05 Vtec

## Supplemental Interim Decision

These consolidated appeals arise out of decisions by the Zoning Board of Adjustment ("ZBA") of the Town of Shaftsbury ("Town"), declining to direct that zoning enforcement actions be initiated against Appellee Hale Mountain Fish & Game Club, Inc. ("Hale Mountain" or "the Club"). Appellants Owen and Kathy Beauchesne ("Neighbors") are the principal parties encouraging the Town to pursue zoning enforcement against the Club. The Neighbors are represented by Paul S. Gillies, Esq. Appellee Hale Mountain is represented by Rodney E. McPhee, Esq.

Neighbors and Hale Mountain have filed cross-motions for summary judgment.

## Factual Background

The Court first addressed the general question of whether it was appropriate to enter summary judgment in either of the two pending dockets when we issued our Interim Decision of March 25, 2008. The parties subsequently filed supplemental cross-motions for summary judgment, all of which are the subject of this Supplemental Interim Decision.

Most of the factual background for this case has already been described in this Court's Interim Decision of March 25, 2008, from which we incorporate undisputed material facts by this reference. To that description, we need only add the following facts, all of which we understand to be undisputed, unless noted otherwise below:

**Facts Related to the Statute of Limitations:**

1. On January 22, 2004, Neighbors sent a letter to the Town's Zoning Administrator expressing their wish "to file a formal complaint" against Hale Mountain.

2. On January 27, 2004, Owen Beauchesne (with his then attorney) attended a Shaftsbury Planning Commission Regular Meeting and "outlined his complaints" regarding what he asserted to be instances of Hale Mountain violating various provisions of the Town Zoning Bylaws. The Planning Commission agreed to investigate the matter.

1

3.     On April 27, 2004, Neighbors sent a letter to the Town Zoning Administrator.  This letter contained specific allegations of ways in which Neighbors believed that Hale Mountain had violated the Zoning Bylaws.  The letter requested that the Zoning Administrator make a determination on each alleged violation.

4.     On May 11, 2004, the Zoning Administrator sent a letter to Neighbors.  This letter constituted the Administrator's ruling (or in some cases a finding that there was insufficient information for a ruling) on each of the alleged violations.  The letter concluded that "[a]t this time I see no clear occurrence of any violation of the Town of Shaftsbury Zoning Bylaws."

5.     On May 24, 2004, Neighbors appealed the Zoning Administrator's May 11, 2004 decision to the ZBA.

6.     On July 28, 2004, the ZBA issued a decision upholding the Zoning Administrator's rulings (and thereby denying Neighbors' appeal) on all but one issue.  On the one issue where the ZBA overruled the Zoning Administrator, the ZBA noted that "after an extensive on-site visit [the ZBA] finds that permits were not obtained for a shooter's shelter and a rifle shooting area."

7.     On August 26, 2004, Neighbors filed a Notice of Appeal with this Court to contest the ZBA's decision insofar as it upheld the Zoning Administrator's rulings.

8.     On May 3, 2005, Neighbors sent a letter titled "Request for Enforcement" to the Zoning Administrator.  This letter contained specific allegations of the ways in which Neighbors believed that Hale Mountain had violated the Town's Zoning Bylaws.

9.     On September 13, 2005, Neighbors sent a letter to the ZBA requesting a decision on whether the Zoning Administrator must serve notices of violation upon Hale Mountain.  The ZBA held a hearing on October 19, 2005, and issued a decision on December 2, 2005, holding that the ZBA would not take any further action on this matter because all relevant issues were already being litigated before this Court.

**Facts Related to Issue Preclusion:**

10.     In addition to the appeals that are currently before this Court, Neighbors submitted an earlier declaratory request to the Coordinator for the District 8 Environmental Commission ("District Commission"), seeking an opinion that some of the alleged improvements and expansions at Hale Mountain's facilities have been so material as to require a state land use permit.  In June 2004, the District Commission Coordinator concluded that expansions and improvements at the pre-existing Hale Mountain facilities needed an Act 250 permit.

2

11. Hale Mountain appealed the District Coordinator's determination and sought de novo review before the former Vermont Environmental Board.[1] After conducting its own site visit and taking evidence at a contested hearing in which the parties here participated, the Board issued an August 2005 plurality opinion, concluding that some improvements and expansions at the facility required an Act 250 permit, but rejecting the neighbors' further argument that the expansions were so pervasive as to require that the entire Hale Mountain facility be subjected to Act 250 review. See In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Findings of Fact, Conclusions of Law, & Order (Vt. Envtl. Bd. Aug. 4, 2005).

12. Five of the nine members of the Environmental Board reached plurality that the following Hale Mountain improvements and expansions were so material as to require Act 250 review:

    (1) installation of a new well and wastewater disposal system in 1983;
    (2) installation of a replacement garage and new clay target storage trailer; and
    (3) improvements in connection with the commencement of the Beagle Club in 1979.

See id. at 24.

13. The Environmental Board did not determine that any other changes occurred on the Hale Mountain site that were significant enough to trigger Act 250 jurisdiction. The Board further concluded that the significant changes that did occur at the Hale Mountain facility were distinguishable from the operation of the facility that pre-dated Act 250 jurisdiction (i.e., June 1, 1970) and therefore did not require Act 250 review of the entire Hale Mountain facility.

14. Neighbors disputed the Environmental Board findings as to the number of material changes requiring Act 250 review and whether Hale Mountain's entire operation should be subjected to Act 250 review. Neighbors therefore appealed those rulings to the Vermont Supreme Court. On September 13, 2007, the Supreme Court announced its conclusion that the Board's factual findings were insufficient, and the Court remanded the declaratory proceedings back to the Environmental Board. See In re Hale Mountain Fish & Game Club, Inc., 2007 VT 102 (mem.). It appears from the Supreme Court decision that it allowed to stand the Board findings on the three material changes, cited above in ¶ 12, that required Act 250 review, but remanded for the Board to make additional specific findings on two general areas of the Board

---

[1] Appeals from determinations made by Act 250 district commissions and their coordinators are now filed with this Court, pursuant to the Permit Reform Act of 2004. See 10 V.S.A. § 8504(a). Before January 31, 2005, such appeals were filed with and decided upon by the former Environmental Board.

decision that the Supreme Court deemed deficient: whether other changes and impacts upon which there was considerable testimony constituted significant changes that necessitated Act 250 review, and whether all changes were so indistinguishable from the pre-existing operation as to require Act 250 review of the entire Hale Mountain operation.

15.     On remand, the Environmental Board made additional findings and issued its determinations on the remanded questions of fact and law.  See In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Supplemental Findings of Fact & Conclusions of Law (Vt. Envtl. Bd. Feb. 26, 2008).  While the Board's Supplemental Findings of Fact and Conclusions of Law made a number of additional factual findings, the Board's final legal conclusion remained the same: it recited the three material changes since 1970 that it had previously held required Act 250 review and decided that since those material changes were distinguishable from the pre-existing operation, it would not require the entire Hale Mountain operation to be subjected to Act 250 review.

16.     Neighbors have appealed the new Environmental Board ruling to the Vermont Supreme Court.  That appeal remains pending before our Supreme Court.

### Discussion

As we mentioned in our March 25, 2008 Interim Decision, the general question in this dispute is whether Hale Mountain has violated the Town's Zoning Bylaws—by not seeking the appropriate zoning permits for material changes to its property or by making changes that violate the Zoning Bylaws' substantive standards.  In reviewing this question de novo under 10 V.S.A. § 8504(h) and 24 V.S.A. § 4472(a), we cannot defer to the ZBA's prior determinations on these matters.  Rather, we are specifically directed to make an independent evaluation by considering the matter "'as though no action whatever had been [previously] held.'"  Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978)).

Each party has asked this Court to grant summary judgment in its favor.  We may grant summary judgment only when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."  V.R.C.P. 56(c)(3).  Generally, the burden of proof is on the party requesting summary judgment.  Chapman v. Sparta, 167 Vt. 157, 159 (1997).  When presented with cross-motions for summary judgment, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the

4

particular motion under consideration. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

As an initial matter, we note that (as we held in our March 25, 2008 Interim Decision) material facts remain in dispute as to whether Hale Mountain made material changes to its facility, without first obtaining the necessary zoning permits. While the additional record and respective statements of material facts are voluminous, what changes were made, when they were made, whether they were material, and whether they were authorized by a zoning permit all appear to be in dispute. Thus, we are unable to conclude that either side is "so clearly correct as to be entitled to a judgment 'as a matter of law.'" Berlin Dev. Assocs. v. Dep't of Soc. Welfare, 142 Vt. 107, 110 (1982) (quoting V.R.C.P. 56(c)). It appears that only a trial can resolve the difficult factual issues involved in whether Hale Mountain's actions required additional or different municipal permits from those which Hale Mountain already obtained. Thus, summary judgment on this matter is inappropriate at this time. We therefore **DENY** both motions insofar as they ask this Court to decide the ultimate issue of whether Hale Mountain has violated the Zoning Bylaws.

Although this Decision will not resolve the entirety of this case, we can address two purely legal questions that the parties raise in their supplemental summary judgment motions. First, we can determine to what extent the statutory limitations on municipal enforcement actions limit the Neighbors' claims against Hale Mountain. See 24 V.S.A. § 4454.[2] Second, we can address whether the parties are collaterally estopped from litigating factual issues already decided by the Environmental Board. Both of these questions are purely legal, and the material facts relevant to these questions are not in dispute. Thus, summary judgment is appropriate on these two legal issues. See V.R.C.P. 56(c)(3).

## A.      Statute of Limitations

We first address the legal question of what improvements or expansions at the Hale Mountain site (if any) fall outside the fifteen-year statute of limitations for zoning enforcement actions. See 24 V.S.A. § 4454. As a general rule, improvements or expansions beyond the applicable limitations period, even if conceded by Hale Mountain to be zoning violations, could not be the subject of a municipal enforcement action. Id.

___

[2]  We note that no comparable limitations exist in Act 250 jurisprudence. Thus, the Environmental Board was able to review changes to the Hale Mountain facility that date back to the inception of Act 250 on June 1, 1970.

In our Interim Decision of March 25, 2008, we explained that the Town's Zoning Administrator has a nondiscretionary duty to enforce the Town's Zoning Bylaws: "A zoning administrator's obligation to initiate an enforcement action in the face of a zoning violation is unequivocal; the Zoning Bylaws do not confer any discretion upon the [Zoning Administrator] to decide whether to permit land development not in conformance with the Bylaws." Interim Decision, slip op. at 7 (citing 24 V.S.A. § 4452; Zoning Bylaws § 8.2.1). We also noted that "[t]he administrative officer has no discretion as to whether to enforce the bylaws in this case; the officer must do so." Id. (citing In re Petition of Fairchild, 159 Vt. 125, 130 (1992)).

For these reasons, mandamus is available to ensure that a zoning administrator enforces zoning violations. Id. That said, a court could only grant mandamus for actions upon which a zoning administrator could bring enforcement. Thus, it is crucial to determine what actions are time barred by 24 V.S.A. § 4454 and therefore unenforceable.

We first note that some actions are not time barred at all. In particular, any zoning violations that involve "public health risks or hazards" can be enforced at any time, regardless of when these violations commenced. 24 V.S.A. § 4454(c). Thus, if Neighbors could prove that the Club has created dangerously high lead levels in the area, to the point where the Town could bring an enforcement action to abate this danger, there would be no limit to how far back the Town could look in this type of enforcement action. See id. Similarly, the fifteen-year statute of limitations does not apply to use violations, which are seen as continuous violations. City of Burlington v. Richardson, No. 188-10-03 Vtec, slip op. at 12 (Vt. Envtl. Ct. June 27, 2006) (Wright, J.) (distinguishing between ongoing use violations and one-time construction violations); accord Appeal of Gauthier, No. 172-9-04 Vtec, slip op. at 7–8 (Vt. Envtl. Ct. Jan. 24, 2006) (Durkin, J.) (noting that when "the underlying enforcement efforts refer to a changed use," they are not time barred). Yet another major exemption from the fifteen-year statute of limitations is for cases brought under 24 V.S.A. § 4470(b). City of Burlington, No. 188-10-03 Vtec, slip op. at 12. ("[T]his statute of limitations . . . is specifically not applicable to enforcement actions brought under 24 V.S.A. § 4470(b) to enforce decisions of the former ZBA or Planning Commission, or of the Court sitting in place of those tribunals in a de novo appeal.").

The parties have not fully addressed which of the alleged violations (if any) fall under these three exceptions to the fifteen-year time limit in 24 V.S.A. § 4454 (the three exceptions being public health risks, use violations, and 24 V.S.A. § 4470(b) actions). Such violations

6

would have no time limit applicable to them. We are therefore not yet able to rule on this issue, and we ask that the parties be prepared to specifically address these factual issues in their presentation of evidence at trial.

To the extent that the alleged violations in this case do not fall into one of the exceptions to 24 V.S.A. § 4454, we must next determine what period of time the fifteen-year statute of limitations encompasses. We are thus presented with the central question of when an enforcement action is "instituted" for purposes of 24 V.S.A. § 4454. The statute specifically notes that an "action, injunction, or other enforcement proceeding . . . [must be] instituted within 15 years from the date the alleged violation first occurred." The "burden of proving the date the alleged violation first occurred" falls upon the party defending against the eventual enforcement action. Id.

The difficulty in this case is that Neighbors are appealing the inaction of the Zoning Administrator; it is undisputed that the Town has not yet, even as of this writing, instituted an action or sought an injunction. That said, we find guidance here in the fact that the main goal of a statute of limitations is "to assure fairness to defendants" by putting them on notice before claims become stale. Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 428 (1965). In this regard, we first note that Hale Mountain goes too far when it asks this Court to hold that no action has yet occurred to toll the limitations period in § 4454. According to Hale Mountain, the clock is still ticking—an interpretation that ignores the principle behind 12 V.S.A. § 466, which states that in general a statute of limitations is satisfied upon the filing of a complaint. Although 12 V.S.A. § 466 only applies to statutes of limitations that are listed in that chapter, it stands for the more general principle that once the complaining party files a complaint within the requisite time period, it has put the defendant on notice of its claims, and it then becomes irrelevant how long the decision-making body takes to decide the issue. Similarly, 24 V.S.A. § 4454 does not require municipalities to complete all of their enforcement actions within the fifteen-year time period; rather, the statute only requires that such enforcement be "instituted" within this time period. In other words, as soon as a municipality begins an enforcement action, it can look back 15 years from the date of beginning that action, no matter how drawn out the subsequent proceedings are.

In this case, Neighbors at numerous times have put Hale Mountain on actual notice of their claims. For instance, on January 22, 2004, Neighbors sent a letter to the Zoning Administrator to express their wish "to file a formal complaint" against Hale Mountain. Then on

7

April 27, 2004, Neighbors sent a longer, more formal letter delineating all of the specific violations they believed that Hale Mountain had caused. The April 27, 2004 letter requested that the Zoning Administrator make a determination on each alleged violation. We note that both of these letters were copied to Hale Mountain and placed the Club on notice of the allegations against its operation. Neighbors' letters appear to be much like demand letters, sent to potential defendants by potential plaintiffs, in anticipation of filing and serving a formal civil complaint. Cf. 12 V.S.A. § 466 (stating that an "action" is "deemed commenced" and therefore tolls an applicable limitations period when it is either filed with the court or served upon the defendant).

Regardless of the legal effect of the January 22, 2004 or the April 27, 2004 letters, we can point to an even more obvious date for when the statute of limitations was tolled. When the Zoning Administrator refused Neighbors' request for a zoning violation determination, Neighbors filed a timely appeal with the ZBA on May 24, 2004. Their appeal to the ZBA served the same function as filing a formal civil complaint in that it again put Hale Mountain on notice of Neighbors' specific claims as to how Hale Mountain was in violation of the Zoning Bylaws.

The ZBA hearing was held after giving public notice, and Hale Mountain representatives were in attendance and actively contested the Neighbors' assertions. Given that Hale Mountain was appraised of Neighbors' legal claims no later than when Neighbors appealed to the ZBA on May 24, 2004, we conclude that the limitations on enforcement against Hale Mountain were tolled no later than that date. Thus, we **GRANT** partial summary judgment to note that to the extent that 24 V.S.A. § 4454 applies, it does not bar enforcement as to any alleged violation that occurred in the 15 years before the Neighbors' ZBA appeal—that is, up to and including alleged violations that occurred on or after May 24, 1989.

Although Hale Mountain might argue that it was not until August 26, 2004, that Neighbors actually filed a Notice of Appeal with this Court, it would make little sense to punish Neighbors for going through the procedural steps that are required before they can file an appeal with this Court. Indeed, Vermont effectively allows the tolling of a statute of limitations even for cases that are filed in the wrong forum. See Lodge at Bolton Valley Condo. Ass'n v. Hamilton, 2006 VT 41, ¶ 8, 180 Vt. 497 (citing Beecher v. Stratton Corp., 170 Vt. 137, 143 (1999)); see also 12 V.S.A. § 558 (allowing improperly filed cases to be re-filed within one year). But cf. Lyman v. Holmes, 88 Vt. 431 (1915) (noting that filing an action against the wrong party does not toll the statute of limitations). If tolling is allowed even for cases that are

filed in the wrong forum, then it surely applies to cases that are filed in the correct forum: the various municipal bodies that must first make determinations on these issues before a case can be appealed to this Court.

Some courts refer to this as "equitable tolling," which "is most appropriate when the plaintiff is required to avail himself of an alternative course of action as a precondition of filing suit." Conley v. Int'l Bhd. Elec. Workers, Local 639, 910 F.2d 913, 915 (9th Cir. 1997); accord, e.g., Higgins v. N.Y. Stock Exch., Inc., 942 F.2d 829, 833 (2d Cir. 1991) (noting that equitable tolling applies "when resort to an agency is a jurisdictional prerequisite to seeking review in . . . court"). In general, a litigant's claims are tolled by good-faith attempts to exhaust other procedures before bringing a lawsuit. See, e.g., Lucas v. Mountain State Tel. & Tel., 909 F.2d 419, 421–22 (10th Cir. 1990) (citing Galindo v. Stoody Co., 793 F.2d 1502, 1509–10 (9th Cir. 1986)). Tolling is necessary in these types of situations because to hold otherwise would result in penalizing those who follow the procedures that should be followed before filing a lawsuit. Id. at 422 (citing Galindo, 793 F.2d at 1510).

We therefore conclude that Neighbors tolled the statute of limitations on May 24, 2004, when they filed an appeal with the ZBA. Allegations of one or more zoning violations against Hale Mountain that arose after May 24, 1989, therefore cannot be time barred by § 4454.

## B.    Issue Preclusion

We now turn to the next issue we can resolve on summary judgment: whether the parties are collaterally estopped from litigating issues that Hale Mountain argues have already been decided by the Environmental Board. See In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Findings of Fact, Conclusions of Law, & Order (Vt. Envtl. Bd. Aug. 4, 2005), rev'd on other grounds, 2007 VT 102 (mem.), remanded, In re Hale Mountain Fish & Game Club, Inc., Decl. Ruling # 435, Supplemental Findings of Fact & Conclusions of Law (Vt. Envtl. Bd. Feb. 26, 2008) (appeal pending).

The doctrine of collateral estoppel (now referred to as issue preclusion) prevents re-litigation of a factual or legal issue that was decided in an earlier case, was necessary to the disposition of that case, and included the party against whom preclusion is sought. See, e.g., In re T.C., 2007 VT 115, ¶ 20 (citing Scott v. City of Newport, 2004 VT 64, ¶ 8, 177 Vt. 491 (2004)). The doctrine applies when all five of the following criteria are met:

9

(1) preclusion is asserted against one who was a party . . . in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same [in both actions]; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion . . . is fair.

Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265 (1990).

All of these criteria must be present before we can find that issue preclusion applies. See id. (using the conjunctive "and" when listing the five criteria).

### 1.    Asserted Against One Who Was a Party in the Earlier Action

The first criterion is not in dispute, since it is clear that the parties to this proceeding are the same as the parties that appeared before the Environmental Board.

### 2.    Issue Was Resolved by a Final Judgment on the Merits

The Environmental Board addressed and decided a number of issues on the merits. Nevertheless, the Environmental Board's most recent ruling has been appealed to the Vermont Supreme Court, and that appeal is still pending. This raises the issue of whether the Environmental Board's ruling is a "final judgment." Trepanier, 155 Vt. at 265. This is an unsettled question, and states are split as to whether the pendency of an appeal affects the finality of a judgment for purposes of issue preclusion or claim preclusion. See generally E.H. Schopler, Annotation, Judgment as Res Judicata Pending Appeal or Motion for a New Trial, or During the Time Allowed Therefor, 9 A.L.R.2d 984, § 2 (2008) (1950). At the latest count, seven states have held that an appeal prevents finality, see id. at § 5(b), while sixteen states and the federal judiciary have held that judgments are final regardless of whether an appeal is pending, see id. at § 5(c).[3] Thus, as one court recently noted, "the majority of jurisdictions" that have addressed this issue have held "that an appeal has no effect on a judgment's finality for purposes of claim preclusion." Edwards v. Ghandour, 159 P.3d 1086, 1090 (Nev. 2007). That said, Vermont is among those states that are yet to decide on one approach or the other.

In one of the first—and only—cases where our Supreme Court wrestled with the question of whether a judgment is final for purposes of issue preclusion, the Court defined finality as a judgment that "still remains in full force, unvacated and unreversed." Small v. Haskins, 26 Vt. 209 (1854). In Small, a justice of the peace rendered the initial decision, and the applicable

---

[3] These numbers exclude Georgia, Pennsylvania, and the District of Columbia, which actually appear on both of these lists. See id. at §§ 5(b)–5(c). This apparent conflict is explained by the fact that different courts in these three states have decided this issue in different ways—further evidence of how unsettled this area of the law remains.

statute allowed the Supreme Court to review that decision de novo "as if the suit had been originally commenced there." Id. The Court noted that in these types of de novo review situations, issue preclusion is not available because the appeal automatically places the parties "in the same situation as if no judgment had been rendered." Id.

Thus, Small currently stands for the proposition that an otherwise final judgment loses its finality when a party exercises its appellate rights to a de novo hearing. Unfortunately, Small does not address whether any other types of appeals can operate to strip judgments of their finality. Nevertheless, given that Small based much of its argument on the de novo aspect of the appeal, we conclude that Vermont judgments are final unless appellate review of that judgment involves a trial de novo. This approach is in accord with the federal approach to finality. See, e.g., Nixon v. Richey, 513 F.2d 430, 438 n.75 (D.C. Cir. 1975) ("The federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel, except where appellate review constitutes a trial de novo." (citing Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 188–89 (1941))).

Under the laws applicable at the time that these proceedings commenced, an appeal from the Environmental Board went to the Vermont Supreme Court as an appeal on the record and not de novo. "The findings of the board with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive." 10 V.S.A. § 6089(c) (1997) (applicable to these proceedings though repealed by amendments that became effective January 31, 2005). Thus, the Supreme Court has described its role as limited: "In interpreting Act 250, we are mindful of our limited role in reviewing an agency's interpretation of a statute it is charged with administering. We give 'great deference to the Board's interpretation of Act 250, even in appeals raising jurisdictional issues.'" In re Green Crow Corp., 2007 VT 137, ¶ 12 (quoting In re Taft Corners Assocs., 160 Vt. 583, 590 (1993)). The Supreme Court, in fact, did not disturb the Environmental Board's three specific factual determinations, but rather remanded the declaratory action back to the Board for more detailed factual findings on other issues. In re Hale Mountain Fish & Game Club, Inc., 2007 VT 102, ¶¶ 8–12 (mem.).

We share Hale Mountain's concerns, however, that proceeding now to make factual determinations in this appeal may result in incongruous decisions. According to one scholar, the only "safe way of avoiding conflicting judgments" is for the second court to defer its actions "until the decision on appeal has been rendered." Schopler, supra, at § 2; accord Willard v.

11

Ostrander, 32 P. 1092, 1094 (Kan. 1893) (holding that the filing of an appeal does not affect the finality of a judgment, but also recommending that trial courts issue a continuance in any pending trials until the appeal is settled because "[o]nly in this way can full justice be done"). Our concerns here are amplified by the tremendous expenditure of time and resources in litigation before this Court, the District 8 Environmental Commission Coordinator, the former Environmental Board, the Supreme Court, and a related nuisance action pending before the Bennington Superior Court. We do not wish to add further to the parties' expenditures by completing a proceeding here that may be in conflict with a subsequent determination by the Supreme Court. We therefore conclude that, while the prior Environmental Board factual determinations should be regarded as final, even though an appeal is now pending, the more proper exercise of our discretion is to postpone our merits hearing until the Supreme Court rules on the current appeal from the Environmental Board.

The need to postpone the current proceedings of course assumes that all of the other requirements for issue preclusion apply. (If issue preclusion were not applicable, the appeal that is before the Supreme Court would be irrelevant to these proceedings.) Thus, even in light of our exercise of discretion here, we must continue our analysis of the remaining legal criteria for issue preclusion to apply.

### 3. Same Issue Was Raised in the Earlier Action

The third criterion for issue preclusion requires that an issue be the same as one raised in the previous action. Trepanier, 155 Vt. at 265. Hale Mountain argues that this criterion is met because the Environmental Board addressed many of the same issues that are before this Court. Neighbors argue that this criterion is not met because the present case "raise[s] different issues, because the standards are not the same." (Neighbors' Resp. to Cross-Mot. Summ. J. at 2.)

Although Neighbors are correct that Act 250 proceedings differ in many ways from municipal permit proceedings (see footnote 2, above), our Supreme Court has noted that similar issues can arise in entirely different contexts and still lead to issue preclusion. See Scott v. City of Newport, 2004 VT 64, ¶ 13, 177 Vt. 491. In Scott, a question of road ownership was decided in an administrative permit proceeding, and the Court applied issue preclusion to prevent re-litigation of this question in a later action to quiet title. Id. The Court noted that issue preclusion is readily available in these circumstances: "For issue preclusion, identity of subject matter or causes of action is not required. Thus, the fact that these cases arose in different contexts . . . is

12

of no matter." Id. (internal citations omitted); accord Berlin Convalescent Center, Inc. v. Stoneman, 159 Vt. 53, 59 (1992) (applying issue preclusion in a later proceeding that arose in a different context). Indeed, issue preclusion even applies to purely factual findings. See Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 209 (2001) ("Issue preclusion applies to issues of fact as well as law." (citing Restatement (Second) of Judgments § 27 (1982))). While it is apparent that different legal standards apply in state and municipal land use proceedings, the actual factual determinations, such as when a garage was built and how large is it, must be applied to the separate standards in each proceeding.

Given the large amount of overlap in the legal and factual issues involved, we conclude that the third criterion for issue preclusion is met. Thus, because we also find that all other criteria for issue preclusion are met, we conclude that final factual determinations made by the Environmental Board and not vacated by the Supreme Court will preclude the relitigation of those factual issues when we conduct our merits hearing. See Mellin, 173 Vt. at 209.

### 4. Full and Fair Opportunity to Litigate the Issue in the Earlier Action

The fourth criterion for issue preclusion requires that the parties had a full and fair opportunity to litigate the issue in the previous action. Trepanier, 155 Vt. at 265. Our Supreme Court has noted that there is "[n]o one simple test" to determine whether this criterion (or the fifth criterion of fairness) is met. Id. Rather, courts should analyze these issues as follows:

> Among the appropriate factors for courts to consider are the type of issue preclusion, the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the existence of inconsistent determinations of the same issue in separate prior cases.

Id. (internal footnotes and citations omitted). More recently, the Supreme Court has noted that the following factors are relevant: "whether there is a substantial overlap in the evidence and argument between the two proceedings; whether the same rule of law is involved; whether pretrial preparation and discovery in the first case covered the issues in the second proceeding; and how closely the claims in the two proceedings are related." Alpine Haven Prop. Owners Ass'n v. Deptula, 2003 VT 51, ¶ 15, 175 Vt. 559. These factors focus on whether the earlier proceeding included enough procedural safeguards to make its outcome fair and reliable.

On balance, the factors cited in Trepanier and in Alpine Haven weigh in favor of allowing issue preclusion in this case. Neighbors' main argument here is that they did not have a

13

full and fair opportunity before the Environmental Board because they were not allowed to engage in discovery. This argument has a fair amount of indirect support, and our Supreme Court has noted that a full and fair opportunity exists when both proceedings involve "the same rules of procedure, discovery, and evidence." Scott, 2004 VT 64, ¶ 16 (emphasis added). Similarly, the Federal District Court of Vermont has noted that claim preclusion is inappropriate "where a plaintiff was unaware of the facts giving rise to a potential claim, a defendant took steps to maintain that ignorance, and no discovery was permitted in the earlier case." Montgomery v. NRL Co., 2007 WL 3243838, at *3 (D. Vt. Nov. 2, 2007) (Sessions, J.) (emphasis added). Although these cases suggest that courts should be more hesitant to allow issue preclusion when discovery was not allowed in the earlier proceeding, this does not mean that formal discovery is a prerequisite to having a full and fair opportunity to litigate. For instance, in Montgomery, the lack of discovery was combined with intentional steps by a defendant to prevent a litigant from learning important information. See id. Without such intentional malfeasance, the Montgomery court might have found preclusion appropriate despite the lack of discovery in the earlier proceeding.

We believe it inaccurate to characterize proceedings before the former Environmental Board as lacking in a full and fair opportunity for a party to litigate.[4] Proceedings before the former Environmental Board contained a number of procedural safeguards—including extensive pre-filed evidence (such as direct testimony and rebuttal), direct and cross examination, and the ability to request further means of discovery—that helped ensure that a full and fair hearing occurred.

Because of these procedural safeguards, the Environmental Board hearings were a far cry from small claims litigation, where we have a legislative indication that judgments should not have a preclusive effect. Cold Springs Farm Dev. v. Ball, 163 Vt. 466, 471–72 (1995) (citing 12 V.S.A. § 5533(c)). Indeed, our state legislature expressed confidence in Environmental Board proceedings by its directive that this Court treat such proceedings on par with the proceedings of this Court: "Prior decisions of the environmental board . . . shall be given the same weight and consideration as prior decisions of the environmental court." 10 V.S.A. § 8504(m).

---

[4] We assume that the critics who once chastised the Environmental Board for the completeness of its proceedings would join us in taking issue with this characterization.

Neighbors made use of the procedural safeguards that made the Environmental Board proceedings fair. Thus, even if Neighbors chose not to request permission for additional discovery, they had other means available to ensure that the proceedings were fair.

Most important to our analysis here is that, as in Scott, Neighbors here "fully and actively participated in every aspect and proceeding" before the Environmental Board and "had every incentive to contest the determination" made in those proceedings. Scott, 2004 VT 64, ¶ 16.

We do not find it significant that Environmental Board rulings were not the product of a court proceeding, since issue preclusion has previously been applied to decisions that were made by other quasi-judicial entities, including the Vermont Public Service Board. See In re Investigation of Nov. 15, 1990 Rate Design Filing of Vt. Power Exch., 159 Vt. 168, 181 (1992) ("[The Plaintiff] had a full and fair opportunity to litigate these issues in the revenue case [before the Public Service Board], and applying issue preclusion in this case is appropriate.").

### 5. Application of Issue Preclusion Is Fair

The final criterion is that it must be "fair" to apply issue preclusion to the pending proceeding. Trepanier, 155 Vt. at 265. For all of the reasons discussed above, where we noted that Neighbors had a full and fair opportunity to litigate these issues before the Environmental Board, we hold that the fairness requirement is met in this case. Our Supreme Court has noted that "[i]n short, . . . the party opposing collateral estoppel must show the existence of circumstances that make it appropriate for an issue to be relitigated." Trepanier, 155 Vt. at 265–66. Neighbors have not made that showing here, and we find that all five of the criteria for issue preclusion have been met. We therefore conclude that issue preclusion is appropriate here.

We note that Neighbors' worries about issue preclusion may be somewhat mollified by the knowledge that the prior rulings of the Environmental Board only have preclusive effect to the extent that an issue was actually decided by the Board. Thus, Neighbors are still free to argue that certain aspects of that decision are not preclusive in this matter because they involve different issues. Nevertheless, our Decision today precludes Neighbors from contesting the factual findings of the Environmental Board that are applicable in this municipal appeal, since those facts, if upheld in the pending appeal, have a preclusive effect. See Mellin, 173 Vt. at 209.

15

## CONCLUSION

For all of the reasons stated above, we **DENY** both parties' summary judgment motions insofar as they ask this Court to decide the ultimate issue of whether Hale Mountain has violated the Town's Zoning Bylaws. We **GRANT** partial summary judgment to note that the fifteen-year statute of limitations contained in 24 V.S.A. § 4454 does not apply to zoning violation allegations that occurred on or after May 24, 1989. We also **GRANT** partial summary judgment on the question of issue preclusion by holding that the determinations of the former Environmental Board have a preclusive effect on the same legal and factual issues material to this appeal.

To ensure that the scarce resources of the judiciary and the parties to these appeals are used most efficiently, we will postpone this trial until the Supreme Court issues a decision on the latest appeal from the Environmental Board.

Done at Newfane, Vermont this 21st day of November 2008.


_____
Thomas S. Durkin, Environmental Judge

16