**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000656
30-JAN-2019
08:04 AM**

NO. CAAP-15-0000656

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE MATTER OF HAWAII STATE TEACHERS ASSOCIATION,
Complainant-Appellant-Appellant, v.
BOARD OF EDUCATION, DEPARTMENT OF EDUCATION, STATE OF HAWAII
and BETH SCHIMMELFENNIG, DEPARTMENT OF EDUCATION,
STATE OF HAWAII, Respondents-Appellees-Appellees, and
HAWAII LABOR RELATIONS BOARD; JAMES B. NICHOLSON;
SESNITA A.D. MOEPONO; and ROCK B. LEY (2008-024),
Agency-Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 14-1-2050)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

In this secondary appeal, Complainant/Appellant-
Appellant Hawai'i State Teachers Association (**HSTA**) appeals from
the Circuit Court of the First Circuit's (**Circuit Court's**) Final
Judgment (**Judgment**), which was entered on August 25, 2015.[1]  HSTA
also challenges the Circuit Court's Order Reversing in Part and
Affirming in Part Hawai'i Labor Relations Board [(**HLRB**)] Order
No. 3015 [(**HLRB's Decision**)], also entered on August 25, 2015
(**Circuit Court's Order**).

_____

[1]    The Honorable Rhonda A. Nishimura presided.

HSTA raises four points of error on appeal, contending that the Circuit Court erred in: (1) affirming HLRB's Decision in that it granted summary judgment in favor of Respondents/Appellees-Appellees the Board of Education, Department of Education, State of Hawaiʻi (**the Board**), and Susan Kitsu (**Kitsu**),[2] then-Director of the Office of Civil Rights Compliance (**OCRC**) (collectively, **Respondents**), on HSTA's allegations of a violation of the statutory duty to provide information under the duty to bargain, in violation of Hawaii Revised Statutes (**HRS**) § 89-13(a)(5) (2012), and willfully violated terms and conditions of the unit 5 agreement, in violation of HRS § 89-13(a)(8); (2) applying the deferral doctrine to the Board's determination of what information was so confidential as to be excluded from its duty to bargain, as a matter of law; (3) affirming HLRB's Decision in that it denied HSTA summary judgment on the allegations of violations of HRS § 89-13(a)(5) and (8); and (4) affirming HLRB's Decision in that it granted the Respondents summary judgment on the allegations of interference with employees' rights, and refusal or failure to comply with other Chapter 89 and contractual provisions, where material facts were in dispute.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to

---

[2]     Pursuant to Hawaiʻi Rules of Appellate Procedure Rule 43(c)(1), the current Director of the Office of Civil Rights Compliance Branch should be substituted for Susan Kitsu, the Director at the time this case was decided by the Circuit Court. According to the Department of Education's website, Beth Schimmelfennig is the current Director, by temporary assignment (last visited January 29, 2019).

the arguments advanced and the issues raised by the parties, we resolve HSTA's points of error as follows:

In Points of Error 1, 2, and 3, HSTA argues that HLRB erred in granting summary judgment in favor of Respondents with respect to HSTA's allegations that Respondents violated HRS § 89-13(a)(5) and (8). HSTA argues that the Board breached its duty to bargain in good faith with HSTA, in violation of HRS § 89-13(a)(5), which provides in relevant part:

> **§ 89-13 Prohibited practices; evidence of bad faith.**
> (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:
> . . . .
> (5) Refuse to bargain collectively in good faith with the exclusive representative as required in section 89-9 [3] . . .

It appears, consistent with well-established federal labor law principles, that HLRB recognized that an employer's duty to bargain in good faith with a union under HRS § 89-13(a)(1)[4] & (5) implicitly includes an obligation to furnish the union, upon request, with relevant information the union needs to fulfill its statutory obligations as the bargaining unit employees' exclusive bargaining representative. See Detroit

---

[3]     HRS § 89-9 (2012) provides, in relevant part:

> §89-9 Scope of negotiations; consultation. (a) The employer and the exclusive representative shall meet at reasonable times . . . and shall negotiate in good faith with respect to wages, hours, the amounts of contributions by the State and respective counties to the Hawaii employer-union health benefits trust fund to the extent allowed in subsection (e), and other terms and conditions of employment which are subject to collective bargaining and which are to be embodied in a written agreement as specified in section 89-10, but such obligation does not compel either party to agree to a proposal or make a concession[.]

[4]     Under HRS § 89-13(a)(1), an employer may not willfully "[i]nterfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter[.]"

Edison Co. v. NLRB, 440 U.S. 301, 303 (1979) (duty to collectively bargain under National Labor Relations Act (**NLRA**), § 8(a)(5) as amended 29 U.S.C.A. § 158(a)(5), "includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative"). See also Thomas Fusco, Annotation, Employer's duty to furnish particular information, other than financial or wage information, to employees' representative under [NLRA], 29 U.S.C.A. § 151 et seq., 113 A.L.R. Fed. 425 (2017). The parties generally agree to this statement of the law.

A union has the initial burden to establish relevancy before an employer must comply with the information request. Sara Lee Bakery Grp., Inc. v. NLRB, 514 F.3d 422, 430 (5th Cir. 2008). Thus, "[a] union's bare assertion that it needs information to process a grievance does not automatically oblige the employer to supply all the information in the manner requested. The duty to supply information under § 8(a)(5) turns upon 'the circumstances of the particular case,' and much the same may be said for the type of disclosure that will satisfy that duty." Detroit Edison Co., 440 U.S. at 314-15 (quoting NLRB v. Truitt Mfg. Co., 351 U.S. 149, 153 (1956)).

In deciding whether requested information is of the type an employer must disclose (i.e., relevant), the United States Supreme Court has adopted the National Labor Relations Board's (**NLRB's**) use of a "discovery-type" standard; there must only be a "probability that the desired information is relevant." NLRB v. New Jersey Bell Tel. Co., 936 F.2d 144, 150 (3d Cir.

1991) (internal quotation marks omitted) (quoting <u>NLRB v. Acme Indus. Co.</u>, 385 U.S. 432, 437 (1967)).

Certain information is "presumptively relevant" under federal law. Namely, wage-related information pertaining to employees in the bargaining unit is "presumptively relevant" because the nature of its relevance is obvious; therefore, the union need not explain its specific requests unless the employer provides effective rebuttal. <u>Emeryville Research Ctr., Shell Dev. Co. v. NLRB</u>, 441 F.2d 880, 887-88 (9th Cir. 1971); <u>Curtiss-Wright Corp., Wright Aeronautical Div. v. NLRB</u>, 347 F.2d 61, 69 (3d Cir. 1965). The NLRB has also applied this rule to the names and contact information of the union's own members. See <u>Prudential Ins. Co. of Am. v. NLRB</u>, 412 F.2d 77, 84 (2d Cir. 1969). In these cases, the duty to provide information is not limited to that which is pertinent to a particular dispute or pending grievance; the union is entitled to information "which would enable it to properly and understandingly perform its duties as such in the general course of bargaining." <u>NLRB v. Whitin Mach. Works</u>, 217 F.2d 593, 594 (4th Cir. 1954). For example, in <u>Whitin</u>, the employer produced lists of data related to union-employees and a list of the hourly wage rates paid at the plant; from this information, however, the union could not determine what each individual union-employee was earning. <u>Id.</u> Because the NLRA entitled the union to "all wage information essential to the intelligent representation of the employees," the employer was required to turn over reasonably-available

records showing the individual wage-rates of union-employees; it was no defense that there was no pending dispute over wages. Id.

Consistent with this rule is a limitation on the obligation to produce information; a requirement that the request pertain to a mandatory subject of collective bargaining. The NLRB has held, "[w]hen the request pertains to a subject that is nonmandatory . . . then neither employers nor labor organizations are obliged under the [NLRA] to furnish information requested for bargaining on [that] subject." Serv. Emps. Local 535, 287 N.L.R.B. 1223, 1225 (1988) (quoting Am. Stores Packing Co., 277 N.L.R.B. 1656, 1658 (1986) (internal quotation marks omitted)). The NLRB has explained that the "duty to furnish . . . information stems from the underlying statutory duty imposed on employers and unions to bargain in good faith with respect to mandatory subjects of bargaining." Id. (quoting Cowles Commc'ns, Inc., 172 N.L.R.B. 1909, 1909 (1968)). In Hawai'i, like under the NLRA, mandatory subjects of collective bargaining include "wages, hours, . . . and other terms and conditions of employment." HRS § 89-9(a); see also 29 U.S.C.A. § 158(d).

HSTA argues that HLRB erred as a matter of law in concluding that Respondents had provided HSTA with sufficient basic information to enable HSTA to perform its duties. HSTA does not cite any authority supporting the proposition that its requests to the OCRC pertained to wages, hours, or "other terms and conditions of employment." Rather, HSTA relies on a broad assertion that it has a duty to "represent" and "assist" the

6

teachers,[5] without explaining how that assistance relates to its statutory duties under HRS Chapter 89. HSTA also asserts that the Teacher 1 and Teacher 2's "employment and terms and conditions of employment were in question[.]" However, HSTA does not explain which terms or conditions of employment those were or otherwise support its assertion.

We reject HSTA's reliance on cases related to a union's "role" during an investigatory interview for the proposition that such representation entitles it to information under the duty to bargain in good faith. It is well-established under federal law that Teacher 1 and Teacher 2 had a right to have an HSTA representative at the meeting with the OCRC. Specifically, the right to organize includes the right to have a union representative present at an employer-meeting or interview that the employee reasonably believes could result in disciplinary action. NLRB v. J. Weingarten, Inc., 420 U.S. 251, 260-62 (1975). This right is not founded on the duty to bargain in good faith, but in the employee's right to act in concert with others for "mutual aid and protection." Id. (interpreting NLRA §§ 7, 8(a)(1) as amended 29 U.S.C.A. §§ 157 & 158(a)(1)). See HRS § 89-3 (2012).[6] This includes instances where the investigator

_____

[5] This case arises out of unrelated student allegations of sexual harrassment/misconduct against two different teachers, who will be referred to as Teacher 1 and Teacher 2.

[6] HRS § 89-3 provides:

§ 89-3 Rights of employees. Employees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment, and to engage in lawful, concerted

(continued...)

does not impose discipline but seeks a statement from an employee to generate a report that will be forwarded to a supervisor in charge of discipline. Exxon Co., 223 N.L.R.B. 203, 207 (1976).

However, the employer is still entitled to investigate an employee's alleged misconduct without interference from union officials and, further, is free to insist on hearing the employee's own account of the matter under investigation. Howard Indus., Inc., 362 N.L.R.B. No. 35 (Mar. 23, 2015) (citing Weingarten, 420 U.S. at 260). This is because, as the NLRB has recognized, the employer "has no duty to bargain with any union representative who may be permitted to attend the investigatory interview." Weingarten, 420 U.S. at 259 (quoting the NLRB's interpretation with approval). The role of the union representative includes providing assistance and counsel to employees who may lack the ability to express themselves or may be "too fearful or inarticulate . . . to raise extenuating factors." Howard, 362 N.L.R.B. at 2 (internal quotation marks omitted) (quoting id. at 260-63, 263 n.7). Accordingly, the union representative is entitled to give the employee "active assistance" during the interview. Id.

On one hand, HSTA argues that Weingarten is irrelevant because it does not "dictat[e] the limits of a union's role during an investigation process or discuss[] the union's role in the context of a duty of fair representation." On the other

_____

[6] (...continued)
activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion.

hand, HSTA cites cases analyzing these issues for the proposition that HSTA's "role" was to provide representation and does not provide us with any other authority that HSTA had a statutory "duty to assist in gather [sic] relevant information[.]" HSTA cites no authority supporting that an employee's right to act in concert for "mutual aid and protection" implicates an employer's duty to bargain in good faith such that a union is entitled to specific information during a disciplinary investigation. We find no error in HLRB's conclusion that HSTA had basic information to enable it to fulfill its duties (i.e., the duty to provide "active" representation at a meeting with the OCRC).

We also reject HSTA's contention that its requests were "presumptively relevant." Here, HSTA did not request information about its own membership related to wages, contact information, or any other topic that could be so central to the relationship between the parties that it is obviously relevant.

We also reject HSTA's assertion that HLRB erred by relying on the nature and timing of the OCRC's investigation. HSTA cites Whitin, where the union was entitled to wage-related information of its own members, regardless of the existence of a related dispute, because the information was "presumptively reasonable." Whitin Mach. Works, 217 F.2d at 594. HSTA invites us to compare Whitin with a completely unrelated case, Arnold v. Air Midwest, Inc., 100 F.3d 857, 863 (10th Cir. 1996). There, the relevant issue was whether an attorney-client relationship existed between a union-attorney and a former union employee where the employee brought claims for breach of fair

9

representation against a union under the Railway Labor Act and for breach of fiduciary duty and legal malpractice against the attorney. Id. at 858-61. Next, HSTA cites to Acme, 385 U.S. at 435-36, for the general proposition that the duty to bargain in good faith includes an obligation to provide information relevant to the collective-bargaining process. Again, HSTA fails to explain how its requests were related to the "collective-bargaining process."

HSTA quotes Lee v. UPW, 125 Hawai'i 317, 329, 260 P.3d 1135, 1147 (App. 2011), as follows: "[I]t is the public policy of the State to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government." HSTA does not explain how this statement relates to its argument. In sum, we cannot conclude, based on the authorities cited by HSTA, that HLRB erred in considering the nature and timing of OCRC's investigation.

HSTA also argues that the "refusal to produce the documents and information was a wilful violation of Article IV section A" and that HSTA is entitled to summary judgment on its claim regarding HRS § 89-13(a)(8)[7]. Article IV, Section A of the collective bargaining agreement covering the period from July 1, 2007, through June 30, 2009 (**CBA**), provides:

---

[7] HRS § 89-13(a)(8) prohibits an employer from willfully violating "the terms of the collective bargaining agreement."

10

ARTICLE IV – ASSOCIATION RIGHTS

A. EMPLOYER INFORMATION

> In addition to any obligation under Chapter 89, HRS, to furnish information in its possession, the Employer will furnish such other information in its possession, in response to reasonable requests by the Association which will assist the Association in  effectively representing the teacher in the collective bargaining process and in the processing of grievances[8]. . . . The Employer need not perform compilation of facts or information for the purpose of responding to such Association requests.

(Emphasis added).

HSTA failed to establish how its requests were related to assisting it in representing a teacher "in the collective bargaining process" or in the "processing of grievances." Grievances are expressly defined in the CBA as claims by HSTA or employees that the Board is not abiding by terms in the CBA. HSTA fails to demonstrate that its requests related to either of these processes.

---

[8]    Within the CBA, Article V governs the "Grievance Procedure" and provides in relevant part:

ARTICLE V – GRIEVANCE PROCEDURE

A.    DEFINITION. Any claim by the Association or a teacher that there has been a violation, misinterpretation or misapplication of a specific term or terms of this Agreement shall be a grievance.

GRIEVING PARTY. Only teachers or their certified bargaining representative, shall have the right to institute and process grievances under this Article.
. . .

L.    The Employer has the right to suspend, demote, discharge or take other disciplinary action against a teacher for proper cause.

M.    Disciplinary action taken against any teacher shall be for proper cause and shall be subject to the Grievance Procedure. An expedited grievance procedure shall be used for suspensions or terminations of teachers. The informal discussion and/or Step 1 of the grievance procedure shall be waived.

If the grievance goes to arbitration, the arbitration process may be either conventional or expedited. If expedited arbitration is used, either party shall have the right to file closing briefs.

Finally, HSTA argues that HLRB erred in granting summary judgment "in favor of respondents on the merits related to the remaining allegations in CE-05-669, *i.e.*, interference of employees' rights, refusal or failure to comply with other Chapter 89 and contractual provisions, where material facts were in dispute." HSTA asserts that "[t]he facts related to claims in the complaint such as the prior rights and incorporation provision of the unit 5 agreement (Article XXI) were not ripe for determination given the uncertainty with respect to the scope of the school code, the transition to the standard practices under Article XXI" and therefore, should not have been decided by summary judgment.

HSTA fails to identify what "material facts" were still in dispute regarding these topics, or explain how those facts relate to its argument pursuant to HRS § 89-13(a). HSTA submitted hundreds of pages of argument, declarations, policies, letters, administrative rules, and other evidence to support and defend its position. HLRB received this evidence and argument in advance of the July 29, 2008 hearing, and then HLRB heard both parties' arguments regarding all of the claims. HSTA does not indicate what evidence it did not have the opportunity to produce, or how its "substantial rights" may have been prejudiced. See HRS § 91-14(g) (provided that the "court may . . . reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced" by legal or factual errors by the administrative agency).

Also, it appears that HSTA argues that provisions in HAR Chapter 41 constitute "Standard Practices" within the meaning of Article XXI, Section A, of the CBA which provides that the teachers "shall retain all rights, benefits and privileges pertaining to their conditions of employment contained in the Standard Practices at the time of the execution of this Agreement." Yet, Section B of that article also provides that "nothing contained herein shall be interpreted as interfering with the Employer's right to make, amend, revise, or delete any portion of the Standard Practices; provided, however, that the Association shall be consulted on any changes to be made." Thus, as HLRB concluded, even if HAR Chapter 41 was "incorporated" into the agreement, HLRB has a contractual right to change those practices after consulting with HSTA. HSTA did not allege that Respondents violated this part of the CBA by failing to consult with HSTA regarding "Standard Practices."

For these reasons, the Circuit Court's August 25, 2015 Judgment is affirmed.

DATED: Honolulu, Hawai'i, January 30, 2019.

On the briefs:

Herbert R. Takahashi,
Rebecca L. Covert,
(Takahashi and Covert),
for Complainant-Appellant-
 Appellant.

James Halvorson,
Richard H. Thomason,
Deputy Attorneys General
for Respondents-Appellees-
 Appellees.

Presiding Judge

Associate Judge

Associate Judge

13