SAM R. CUMMINGS, SENIOR UNITED STATES DISTRICT JUDGE
On this date, the Court considered:
(1) Defendant's Motion for Judgment on the Pleadings and Motion for Summary Judgment, filed November 19, 2018;
(2) Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings and for Summary Judgment, filed December 10, 2018;
(3) Plaintiff's Objections and Motion to Strike Defendant's Summary Judgment Evidence, filed December 10, 2018;
(4) Defendant's Reply to Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings and for Summary Judgment, filed December 24, 2018;
(5) Defendant's Response to Plaintiff's Objections and Motion to Strike, filed December 31, 2018;
(6) Defendant's Objections to Plaintiff's Summary Judgment Evidence, filed December 31, 2018;
(7) Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Strike, filed January 15, 2019; and
(8) Plaintiff's Response to Defendant's Objections to Plaintiff's Summary Judgment Evidence, filed January 21, 2019.
I. BACKGROUND
This case arises out of the partial denial of an insurance claim filed by Plaintiff on a homeowner's policy.[1] The alleged covered event was a storm with high winds that Plaintiff contends not only damaged the *648 metal roof of the outbuilding/barn, but also caused movement of the home on its foundation resulting in interior and exterior wall cracking (along with door sagging and closure issues). Plaintiff alleges that the damage was discovered on March 7, 2017, and that the storm must have occurred prior to that date. The ranch dwelling at issue is only used periodically by the owners (who reside in Lubbock and maintain another home within 15 minutes of the ranch) and is not permanently inhabited. Plaintiff's agent was notified on March 8, 2017, to report the claim to Defendant. Defendant's claims department received notice on March 16, 2017, and the claim was assigned to Ronald Pritchett, who assigned the claim to independent adjuster Aaron York to inspect the property. Based upon the availability of Ms. Patsy Day, York set the inspection for March 31, 2017, and inspected the property on that date. York took 253 photos during the course of his inspection that day and informed Plaintiff that the wind damage alleged to have shifted the residence on its foundation was unlikely because he believed the "settling damages" were older than the obvious wind and hail damage that was visible. York advised Plaintiff that the wall cracking damages were unrelated to the reported loss.[2]
Upon review of the claim and adjuster's file, Defendant determined that an engineer should be hired to determine whether the issues with the residence's wall cracks were caused by wind or by soil settlement/elasticity under the house. However, payment was tendered on May 2, 2017, for the covered hail damage to the property (including the residence) and the covered wind damage to the pole barn/outbuilding.[3] After the engineer, Jerry Hall, filed his report, which contained 56 color photos and his findings, Defendant denied part of Plaintiff's claim based upon an assertion that the cracking damage to the residence's structure was caused by soil movement beneath the house rather than a movement of the bricked house by high winds.
Plaintiff brings claims for breach of insurance contract, bad-faith settlement claims, declaratory judgment for coverage, and other extra-contractual common law claims. Defendant seeks judgment on the pleadings as to all of Plaintiff's claims or, in the alternative, summary judgment on ail claims.
II. STANDARDS
Rule 12(c) motions are analyzed under the same standard as Rule 12(b)(6) motions. Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. Fed. R. Civ. P. 12(b)(6). The test for determining the sufficiency of a complaint under Rule 12(b)(6) was set out by the United States Supreme Court as follows: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson , 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also, Grisham v. United States , 103 F.3d 24, 25-26 (5th Cir. 1997).
*649 When a non-movant submits material outside the pleadings in response to a Rule 12(b)(6) motion, the non-movant is deemed to have constructive notice that the motion to dismiss might be treated as a motion for summary judgment. Dayco v. Goodyear Tire & Rubber Co. , 523 F.2d 389, 393 (6th Cir. 1975). Constructive notice that the court might consider matters outside the pleadings is sufficient to satisfy the notice requirements of Rule 56. Madewell v. Downs , 68 F.3d 1030, 1048 (8th Cir. 1995). A party who submits material beyond the pleadings in opposition to a Rule 12(b)(6) motion to dismiss is scarcely in a position to claim unfair surprise or inequity. Arnold v. Air Midwest, Inc. , 100 F.3d 857, 859 n.2 (10th Cir. 1996).
In the instant case, this Court finds that (1) not only does Defendant's Motion for Judgment on the Pleadings and for Summary Judgment give the non-movant Plaintiff actual notice that this Court might treat Defendant's motions as a Rule 56 motion, but (2) the non-movant Plaintiff has submitted materials outside the pleadings in response to Defendant's alternative motions and "is scarcely in a position to claim unfair surprise or inequity." Id. Accordingly, pursuant to Rule 12(b), this Court will treat Defendant's alternative motions as a Rule 56 motion for summary judgment.
Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal quotes omitted). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. Id. at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's case," Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with significant probative evidence showing a triable issue of fact. FED.R.CIV.P. 56(e) ; State Farm Life Ins. Co. v. Gutterman , 896 F.2d 116, 118 (5th Cir. 1990). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial. Douglass v. United Servs. Auto. Ass'n , 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); SEC v. Recile , 10 F.3d 1093, 1097 (5th Cir. 1993). To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. See Anderson , 477 U.S. at 251, 106 S.Ct. 2505. Rather, the non-movant must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. Id.
III. DISCUSSION
Objections to Summary Judgment Evidence
Plaintiff objects to the expert report of Jerry Hall. Hall was the engineer hired to make a determination whether the damage to the house was caused by winds or due to foundation settlement. Specifically, Plaintiff objects to paragraphs 5, 6, 7, and 8 of Hall's report by arguing that the statements contained therein are based upon hearsay because Hall failed to attach the National Oceanic and Atmospheric Administration *650 ("NOAA") weather reports and United States Geological Survey soil reports which he relied upon in arriving at his opinions and findings. Further, Plaintiff objects to paragraphs 10 and 11 as conclusory. However, the Court finds that the cause of the damage is precisely the type of testimony and statements for which an expert is hired and generally allowed to testify about. The Court finds that the witness is qualified and also notes that experts are free to rely upon hearsay in making their determinations. Finally, Plaintiff contends broadly, without further specifies, that the best evidence rule requires the production of the actual reports Hall relied upon. The Court notes that historic weather data from NOAA and soil map data from USGS are clearly the type of facts and data that experts routinely rely upon and have formed the basis for many expert opinions in cases before the Court over the years. Plaintiff may cross-examine the witness at trial as to his methods and materials relied upon. After considering Plaintiff's objections, the Court finds that Plaintiff's objections are OVERRULED for the reasons argued in Defendant's Response thereto.
Defendant objects to the declarations of Bobby Day and Patsy Day as related to their beliefs about the cause of damages to the property. Specifically, Defendant objects that Ms. Day states she believed the cause of damages was tornados or near tornado-speed winds. Defendant argues that both Bobby Day and Patsy Day state in their declarations that neither were present on the date of the storm that is alleged to have caused the damages. Defendant also objects to the opinion testimony of Glen Morton regarding breach of legal duties and standards in the insurance industry-specifically, whether Defendant conducted an adequate investigation. More specifically, Defendant contends that Morton was not timely disclosed to testify to such matters. Defendant further argues that such testimony by Morton is unreliable and he is unqualified to present such opinions/testimony. The Court finds that Defendant's objection to the testimony of Morton is SUSTAINED as it relates to legal duties, standards, and adequacy of the investigation.[4] Defendant also objects to the unsworn report of Dr. Brad Ewing as unsupported hearsay. Finally, Defendant objects to certain opinions by Victor Lissiak (regarding professional negligence and wrongful claims decisions) as having never been disclosed in Plaintiff's expert disclosures for those topics. Defendant may call or cross-examine each of these witnesses at trial regarding the complained-of issues. For the reasons argued in Plaintiff's Response thereto, Defendant's objections are OVERRULED IN PART with the exception as stated above being the testimony of Glen Morton as to industry standards, legal duties, and adequacy of the investigation.
Analysis
First, Defendant seeks judgment on the pleadings (or alternatively, summary judgment) on Plaintiff's declaratory judgment claim. Defendant contends that the claim is not actionable and cannot serve as a basis for an award of fees. As noted by Defendant, the matters for which a declaratory judgment are sought are already before the Court and brought by Plaintiff in the remaining claims for breach of contract and bad faith settlement practices. Moreover, a court has discretion on whether to issue a declaratory judgment under the Federal Declaratory Judgment Act. As such, the Court finds that Defendant's *651 Motion should be GRANTED as to Plaintiff's declaratory judgment claim and the claim DISMISSED for the reasons argued in Defendant's Motion and Reply.
Second, Defendant argues that summary judgment should be granted as to Plaintiff's unfair settlement practices and bad-faith claims because a valid dispute existed as to coverage under the insurance policy. As argued by Defendant, Plaintiff's disagreement with the findings of Defendant's engineer, Mr. Hall, and the independent adjuster, Mr. York, along with the coverage decision by Mr. Pritchett, does not provide sufficient basis for a claim of unfair settlement practices or bad faith. The claim activity logs indicate the entire process of reviewing the claim. The logs further show the ultimate decision to deny coverage beyond the covered hail and wind damage for the residence and pole barn. (Def.'s Ex. B.)
Mr. Hall's report and pictures clearly show settlement issues under the house. (Def.'s Ex. B-4.) Moreover, his report (which Defendant relied on, in part, for denying coverage) also included findings related to wind damage versus settlement. Hall has included multiple photos depicting settlement of the concrete blocks into the soil under the house, older cracks in the exterior brick and interior sheetrock walls, and no visible wind damage to the roof of the residence or windows.[5] Ms. Day indicates that the house has had foundation settlement issues in the past that required re-leveling when certain remodeling projects were done. (Def.'s Ex. C, Patsy Day depo. at 72 and 99.) The adjuster relied upon his experience to determine that the claim required further investigation and Hall was hired to complete an engineer's report on the matter. As a matter of law, it cannot be said that the Defendant acted beyond reasonable bounds in the investigation and determination of coverage for the claim-certainly not in a manner that would impose bad-faith liability. Clearly, a bona fide dispute existed over coverage for the damages to the residence.[6] At no point during the claims process was it ever reasonably clear that liability existed beyond the amounts that were tendered for the undisputed coverage. Plaintiff has failed to create a genuine issue of material fact that would preclude the granting of summary judgment on Plaintiff's unfair settlement practices and bad-faith claims under the facts and circumstances presented in this case. Thus, the Court finds that Defendant's Motion for Summary Judgment should be GRANTED as to Plaintiff's unfair settlement practices and bad faith claims and those claims are DISMISSED.
As noted by both parties, the experts clearly disagree as to the cause of the cracking and have submitted differing conclusions and opinions as to whether the cracking of the walls has resulted from foundation settlement/soil elasticity issues or from high winds. The declarations of the Days indicate that they noted signs of high winds that damaged other property at the ranch. Thus, genuine issues of fact clearly remain as to the cause of the damages to the house and preclude summary judgment on the breach of insurance contract claims. As such, summary judgment on Plaintiff's breach of insurance contract is DENIED and the breach of contact *652 claim remains set for trial for a jury to determine the cause of the alleged cracking to the residence structures, whether coverage exists, and amount of damages, if any.[7]
IV. CONCLUSION
For the reasons stated herein, Defendant's Motion for Judgment on the Pleadings and for Summary Judgment is GRANTED IN PART. More specifically, Plaintiff's claims for declaratory judgment, unfair settlement practices, and bad faith are DISMISSED and Plaintiff's breach of contract claim remains pending for trial. Plaintiff's Motion to Strike Summary Judgment Evidence is DENIED and the objections contained therein are OVERRULED. Defendant's Objections to Plaintiff's Summary Judgment are OVERRULED as to all objections other than the objection to certain testimony of Glen Morton that relates to specialized knowledge and expertise.
SO ORDERED.

Even though the Policy was a State Auto Premier Farm and Ranch Policy (no. FO-0127982), it only provided coverage for named perils for the ranch dwelling (Coverage A), which included coverage for windstorm. The Policy was not endorsed to provide coverage for barns and farm buildings (Coverage D). The Policy excludes coverage for damage resulting from earth movement, including sinking, rising, shifting, expanding, or contracting. The Policy does provide for loss of use coverage for additional living expenses when expenses are actually incurred, and loss of use coverage for fair rental value for a residence that is uninhabitable, for the shortest time required for the repairs.

Plaintiff reported further damage to the property from alleged tornadic winds on April 24, 2017.

Pritchett confirmed the assignment of engineer Jerry Hall of Donan Engineering to conduct an inspection of the residence structural damages, and on May 22, 2017, Hall advised that he had inspected the property and was completing his investigation/report. The report was issued on May 31, 2017. A claim decision letter issued on July 17, 2017.

Morton may testify to facts known to him as the agent who obtained the insurance and inspected the property prior to coverage being issued.

The testimony of Patsy Day given in her deposition indicates that a window was broken when she arrived on March 7, 2017, but she fails to indicate how that one window indicates tornadic wind destruction as opposed to hail damage that is visible in the adjuster's photos.

No dispute existed as to coverage for hail damages and payment was tendered for those damages, along with payment for some wind-related damages to property.

Although some of Plaintiff's direct damage claims alleged to have arisen out of breaches of the insurance contract seem quite tenuous, the Court will allow them to proceed forward at this time. However, the Court will likely entertain a Rule 50 motion at trial related to any such damage claims which are not supported by sufficient evidence. For example, the loss of use (living expenses) damages, as argued by Defendant, are tenuous because the Days resided in other properties and have failed to show that any damages have arisen beyond possible loss of hunting accommodations at the ranch residence structure. Likewise, the evidence indicates that the property is not leased as a residence.